# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **RUSSELL LIPPERT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 5:03-CV-2741-VEH |
| | ) |
| **COMMUNITY BANK, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

This lawsuit was initiated on October 6, 2003. (Doc. #1). On June 28, 2004, the undersigned inherited this case upon reassignment. (Doc. #31). This case is on remand by the Eleventh Circuit (Doc. #85), and is set for trial beginning Monday, December 4, 2006, in accordance with the Pretrial Order (Doc. #86) entered on June 1, 2006.

Pending before the court is Defendant Community Bank's ("Community") Motion to Exclude Testimony and Report of Plaintiff's Designated Damages Expert (Doc. #106) filed on September 29, 2006. Plaintiff Russell Lippert ("Lippert") filed his opposition (Doc. #117) on October 30, 2006. As discussed more fully below, Community's Motion to Exclude Testimony and Report of Plaintiff's Designated Damages Expert is **DENIED**.

## II.  BACKGROUND

This retaliatory discharge case arises under 12 U.S.C. § 1831j. In its Motion to Exclude Testimony and Report of Plaintiff's Designated Damages Expert, Community seeks to exclude Lippert's expert witness, Kelly J. Todd, who is a certified public accountant, from giving testimony on the issue of economic damages that Lippert has allegedly suffered as a result of his separation from Community, including past and future losses of compensation and fringe benefits. (Doc. #116 at 3).

## III.  ANALYSIS

### A.  Federal Rule of Evidence 702

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and reaffirms the trial court's role as "gatekeeper:"

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Civ. P. 702.  Rule 702 must be read in conjunction with three seminal decisions by the Supreme Court related to expert testimony. *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

In *Daubert*, the Supreme Court rejected the previously followed "general acceptance" standard on the admissibility of scientific expert testimony established in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). Instead, the *Daubert* Court addressed admissibility of scientific expert testimony within the framework of Federal Rule of Evidence 702 and emphasized the role of the district court in performing a "gatekeeping" function to ensure that any admitted expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 592-94.

In describing the district court's gatekeeping function, the Court stated:

[T]he trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592-93.

Thereafter, in *Joiner*, the Supreme Court upheld a district court's decision granting summary judgment for the defendant on the basis that the plaintiff's experts' testimony connecting plaintiff's cancer to his exposure to PCBs and other chemicals did not rise above the level of subjective belief and speculation. *Joiner*, 522 U.S. at

3

138-39. In clarifying the standard articulated by *Daubert* that requires such testimony to be sufficiently relevant and reliable, the *Joiner* Court pointed out that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *Joiner*, 522 U.S. at 146 (citation omitted).

Two years later, the court issued the *Kumho Tire* decision, which extended the *Daubert* analysis to all types of "technical and other specialized knowledge." *Kumho Tire*, 526 U.S. at 141.  ("We conclude that *Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.").  In *Kumho Tire*, the Court addressed the admissibility of proffered testimony from an engineer who was an expert in tire failure analysis. *Kumho Tire*, 526 U.S. at 141.  In upholding the district court's decision to exclude the plaintiff's expert's testimony based upon lack of reliability, the Supreme Court noted that the relevant inquiry was whether the expert could reliably determine the cause of the specific tire's separation.  *Kumho Tire*, 526 U.S. at 154.

As the Eleventh Circuit has clarified, "[a] district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'"

4

*Maiz*, 253 F.3d at 666 (citation omitted). Instead, "'federal district courts . . . perform [their] important gatekeeping function by screening the reliability of all expert testimony, but they have substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable.'" *Maiz*, 253 F.3d at 666 (citation omitted). In those instances in which an expert witness's testimony passes the district court's screening function as to admissibility, the tools of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof [still remain available to the opposing litigant as] the traditional and appropriate means of attacking [debatable] but admissible evidence.'" *Id.* (citations omitted).

Based upon the guidance provided by the Supreme Court and the Eleventh Circuit in the aforementioned decisions, Lippert must prove the following items by a preponderance of the evidence in order for this court to admit the expert opinions: (1) his expert is qualified to testify regarding the matters she intends to address; (2) the methodology by which the expert reaches her conclusions is sufficiently reliable; and (3) the expert's opinions are "sufficiently tied to the facts of the case [so] that it will aid the jury in resolving a factual dispute" (*i.e.*, that the opinion and the facts of the case "fit"). *Daubert*, 509 U.S. at 591; *see also Maiz*, 253 F.3d at 665. Whether these requirements are met is within the sound discretion of this court, tempered with

a "liberal policy of admissibility." *Joiner*, 522 U.S. at 138-139; *Daubert*, 509 U.S. at 596. While there is necessarily some overlap when these requirements are applied, they are distinct concepts, and their application requires independent analyses. *Quiet Tech. v. Hurel-Dubois UK*, 326 F.3d 1333, 1341 (11th Cir. 2003).

> **B.   Community's challenges of Ms. Todd as an expert witness do not establish that her testimony is unreliable or that it does not fit within the facts of this case under Rule 702.**

Community does not raise any questions about the qualifications of Ms. Todd to serve as an expert witness. Instead, Community maintains that Ms. Todd has "disregarded legal and professional standards and relied upon impermissible speculation when she opined that the plaintiff has lost as much as $1,957,310." (Doc. #107 at 1). More specifically, Community argues that the 25.39 year loss period assumed by Ms. Todd is unreasonable as a matter of law. (*Id.* at 6). Additionally, Community faults Ms. Todd for relying upon the income and business expense figures that Lippert provided to her that he reported on his tax returns. (*Id.* at 18-19).

However, these challenges do not establish that Ms. Todd's testimony is speculative, unreliable, or that it does not fit within the facts of this case. Rather, they amount to efforts to show potential weaknesses in her testimony and to convince the court to give little or no weight to this expert evidence with respect to deciding the issue of front pay.

For example, none of the cases relied upon by Community establishes that Ms. Todd's damages model in the form of a "yearly measuring stick" (Doc. #118 at 7) is unreliable or that the use of the figures contained in Lippert's tax returns is inappropriate in reaching yearly front pay projections.[1] In fact, Ms. Todd has testified that the model she used is a common way of reporting such damages. (*See, e.g.*, 106 at Ex. B at 89). Contrastingly, Community has not offered any evidence to the contrary in criticizing Ms. Todd's methodology.

Moreover, a similar type of yearly damages model for front pay has been suggested in at least one other district court within the Eleventh Circuit. *See Hipp v. Liberty National Life Ins. Co.*, 29 F. Supp. 2d 1314, 1328 (M.D. Fla. 1998) ("Finally, Plaintiffs' calculations must be provided on a yearly basis so that the Court has a means of selecting a particular year in which to end the front pay award.").

Furthermore, the Eleventh Circuit has recognized that in calculating economic injury in an employment case:

> [C]ourts in essence have presumed that once the plaintiff shows that discrimination resulted in economic injury, either through improper discharge or a failure to hire, the injury continues until reinstatement. This presumption is proper not only because the defendant's wrongful conduct prevents accurately reconstructing the plaintiff's work history

---

[1] The cases cited by Community to persuade the court that Ms. Todd's reliance upon Lippert's tax returns to make front pay projections are significantly dissimilar from this case, are far from dispositive, and regardless are not binding on this court.

but also because in the absence of evidence to the contrary, no reason exists to assume that employment for an indefinite term would not have lasted indefinitely.

*See Walker v. Ford Motor Co.*, 684 F.2d 1355, 1361 (11th Cir.1982).  Therefore, as part of any award for front pay, this court will need to consider any contrary evidence as to Lippert's expected years of service in evaluating the reasonableness of Ms. Todd's damages analysis.  However, the need for such an independent assessment and potential adjustments by the court does not render Ms. Todd's testimony unreliable and inadmissible within the meaning of Rule 702.  Instead, it is an acceptable and anticipated part of the front pay determinative process.  (*See, e.g.*, Doc. #116 at 3 ("Future losses represent the present net cash value at expected earnings. Adjustments to these calculations, however, may be necessary for changes in time periods, findings by the trier of fact and/or rulings by the court.")).

### III.   CONCLUSION

As analyzed above, Community's Motion to Exclude Testimony and Report of Plaintiff's Designated Damages Expert is **DENIED**.

**DONE** and **ORDERED** this the 31st day of October, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge